UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| DONALD THOMAS SCHOLZ, | CASE NO. C13-1229 JLR |
| Plaintiff, | ORDER DENYING PRELIMINARY INJUNCTION |
| v. | |
| FRAN MIGLIACCIO (aka FRAN COSMO) and ANTHONY MIGLIACCIO (aka ANTHONY COSMO), | |
| Defendants. | |

This matter comes before the Court on Plaintiff's motion for a preliminary injunction. (Dkt. No. 2.) The Court considered the motion, all responsive briefing, oral argument, and all related documents. The Court DENIES the motion.

**Background**

BOSTON is a classic rock band that released its self-titled debut album in 1976. (Dkt. No. 2 at 5.) The band released subsequent albums in 1978, 1986, 1994, 1997 and 2002. (Id.) Plaintiff Donald Thomas Scholz ("Scholz") is the leader of the band BOSTON and the sole owner of all trademarks associated with the band. (Dkt. No. 2 at 3.) Defendant Fran Migliaccio,

ORDER DENYING PRELIMINARY
INJUNCTION- 1

1 also known as Fran Cosmo, joined BOSTON in 1992 during the recording of the band's fourth
2 album, and was a lead vocalist on multiple BOSTON albums. (Dkt. No. 18 at 2.) Fran Cosmo
3 preformed live on BOSTON tours from 1994-2002. (Id.) Defendant Anthony Migliaccio, also
4 known as Anthony Cosmo, is the son of Fran Cosmo and wrote songs for Plaintiff from 1999-
5 2004, three of which were recorded on a BOSTON album. (Id. at 3.) Anthony Cosmo toured
6 with BOSTON in 2003 and 2004 as a backing vocalist and guitarist, and worked with BOSTON
7 until 2006. (Id.)

8 BOSTON continues to tour nationally and internationally and to release new music. (Dkt.
9 No. 2 at 5.) Scholz is the sole owner of the trademark/service mark "BOSTON" and the
10 distinctive "BOSTON" logo (collectively, "BOSTON marks"), which are registered with the
11 United States Patent and Trademark Office. (Dkt. No. 2 at 6.) Defendants do not contest that
12 Plaintiff owns the BOSTON marks. (Dkt. No. 18 at 3.)

13 Fran Cosmo now performs with his son Anthony Cosmo under his own name, and also
14 with a group called the World Classic Rockers. (Dkt. No. 18 at 2.) Scholz alleges Defendants are
15 misusing the BOSTON marks by using them to advertise and promote their own performances in
16 recent concerts. (Dkt. No. 2 at 6.) For example, Scholz alleges Fran Cosmo improperly promoted
17 himself as "Fran Cosmo of BOSTON" and "BOSTON former lead singer Fran Cosmo." (Id. at
18 7.) Scholz alleges Defendants' promotional methods cause confusion by employees and agents
19 of venues the Cosmos perform at, as well as amongst consumers. (Id. at 9-10.) Defendants deny
20 they improperly use the BOSTON marks, and argue they have made fair use of them to
21 accurately represent themselves as former members BOSTON. (Dkt. No. 18 at 3.)

22
23
24

**Analysis**

"A plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008). A preliminary injunction is an extraordinary remedy, and will not be imposed unless the movant carries the burden of persuasion by a clear showing. Mazurek v. Armstrong, 520 U.S. 968, 972 (1997). Here, Plaintiff has not carried his burden.

I. Likelihood of Success on the Merits

Scholz argues he is likely to succeed on the merits under the Lanham Act, 15 U.S.C. §1114. He argues he can demonstrate (1) he owns a protectable trademark and (2) the Cosmos' use of the BOSTON marks is likely to result in consumer confusion. (Dkt. No. 2 at 10), Brookfield Comm'ns Inc. v. W. Coast Entm't Corp., 174 F.3d 1036, 1054 (9th Cir. 1999). When analyzing the likelihood of consumer confusion, courts should consider the strength of the mark, relatedness of the goods, similarity of the marks, actual confusion, marketing channels, degree of consumer care, the defendant's intent, and likelihood of expansion. AMF, Inc. v. Sleekcraft Boats, 599 F.2d 341, 348-49 (9th Cir. 1979). Defendants do not dispute Scholz owns the protectable BOSTON marks, and this is a nonissue. (Dkt. No. 18 at 12.) Instead, they assert the "nominative fair use" defense, arguing their use of the BOSTON marks is fair and legitimate. (Id.) Because they assert nominative fair use, Defendants' argue the Sleekcraft consumer confusion test does not apply. (Id.) Plaintiff argues, with no support, the nominative fair use test does not apply when actual confusion exists. (Dkt. No. 24 at 5.)

      a. Nominative Fair Use

The nominative fair use analysis replaces the <u>Sleekcraft</u> consumer confusion analysis and is the appropriate test in this case. "[The] nominative fair use analysis is appropriate where a defendant has used the plaintiff's mark to describe the plaintiff's product, even if the defendant's ultimate goal is to describe his own product." <u>Carins v. Franklin Mint Co.</u>, 292 F.3d 1139, 1150 (9th Cir. 2002)(emphasis omitted). The Ninth Circuit has held a commercial user is entitled to a nominative fair use defense where he meets three requirements: (1) the product or service in question must be one not readily identifiable without the use of the trademark, (2) only so much of the mark or marks may be used as is reasonably necessary to identify the product or service, and (3) the user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder. <u>New Kids on the Block v. News America Pub.</u>, 971 F.2d 302, 308 (9th Cir. 1992).

It is "classic fair use" where a defendant uses the plaintiff's mark to describe the defendant's own product. <u>Id</u>. The difference between the classic fair use defense and the nominative fair use defense is important, because the classic fair use analysis only contemplates the consumer confusion analysis set forth in <u>Sleekcraft</u>, where the nominative fair use analysis replaces the <u>Sleekcraft</u> analysis. <u>Carins,</u> 292 F.3d at 1150. Nominative fair use is asserted here.

      b. Burden of Proof

The Lanham Act always places the burden of showing confusion on the party charging infringement, but where nominative fair use is asserted, the defendant has the initial burden of showing it used the mark to refer to the trademarked good. <u>Toyota Motor Sales, U.S.A., Inc. v. Tabari</u>, 610 F.3d 1171, 1183 (9th Cir. 2010). After this showing is made, the burden shifts back to the Plaintiff. <u>Id</u>.

Here, Defendants have shown they used the BOSTON mark to refer to the trademarked good, the band BOSTON. Plaintiff does not dispute this; in fact, Plaintiff's argument is based on his assumption that Defendants are using the BOSTON marks to refer to the band BOSTON. (Dkt. No. 2 at 13.) Defendants have met this initial burden.

        c. Application of Nominative Fair Use Test

Because Defendants assert a nominative fair use defense, the nominative fair use test replaces the Sleekcraft consumer confusion test. Carins, 292 F.3d at 1150. Although Plaintiff argues evidence of actual confusion precludes the nominative fair use defense, they offer no support for this assertion and the Court finds none. (Dkt. No. 24 at 5.)

        1. The product or service in question must be one not readily identifiable without the use of the trademark.

Defendants have shown, and Plaintiff would likely not disagree, that the band BOSTON is not readily identifiable without the use of the trademark. This cannot be reasonably contested. "Just as it is virtually impossible to refer to the New Kids on the Block, the Chicago Bulls, Volkswagens, or the Boston Marathon without using the trademarked names" it is also virtually impossible to refer to the band BOSTON without using the trademarked name. Brother Records v. Jardine, 318 F.3d 900, 908 (9th Cir. 2003). This element is met.

        2. Only so much of the mark or marks may be used as is reasonably necessary to identify the product or service.

Plaintiff contends Defendants used the distinctive BOSTON logo improperly. (Dkt. No. 2 at 6.) Defendant Anthony Cosmo states in his declaration he and Defendant Fran Cosmo never use the BOSTON logo under any circumstances. (Dkt. No. 21 at 2.) At the very least, this is an issue of fact, and the nominative fair use defense remains viable.

      3. The user must do nothing that would, in conjunction with the mark, suggest sponsorship or endorsement by the trademark holder.

Defendants make a strong argument they have done nothing with the mark to suggest sponsorship or endorsement by BOSTON. They present to the Court a rider used in contractual agreements for performances that states clearly the name "Fran Cosmo" is to appear larger than any reference to BOSTON, and the language must indicate Fran Cosmo is the former lead singer of BOSTON. (Dkt. No. 21 at 27.) In contrast, the Ninth Circuit found this element not met where former Beach Boys member Al Jardine used the Beach Boys mark most prominently on his advertisements, indicating sponsorship. Brother Records, 318 F.3d at 908. Here, the contractual rider used by Defendants actually states, "The intent is to make it clear that this is not a performance by Boston, but in fact a performance of the Hits of Boston, performed by its' former players." (Dkt. No. 21 at 27).

Plaintiff asserts Defendants should be doing more to control misuse of the BOSTON marks by third parties, and asks the Court to infer Defendant is doing something to promote confusion amongst third parties, such as venues, because these third parties allegedly misuse the BOSTON marks in relation to Defendants' shows. (Dkt. No. 24 at 6.) Plaintiff cites the recent case Robinson v. Delicious Vinyl Records, Inc., 2013 U.S. Dist. LEXIS 109279 (C.D. Cal. Aug. 1, 2013), for the proposition that a defendant can be vicariously liable for a third-party infringer's action when they have "an apparent or actual partnership, have authority to bind one another in transactions with third parties or exercise joint ownership or control over the infringing product." Id. at *17. While the Robinson court found likelihood of success under this theory on the facts of that case, Plaintiff has not shown the Cosmos are in partnership with infringing third parties, or that they exercise joint control over infringing statements or products.

ORDER DENYING PRELIMINARY
INJUNCTION- 6

In Robinson, the defendants admitted to "direct control and monitoring" of infringing third parties, and had offered to indemnify at least some of them against trademark litigation that may arise from their promotional materials. Id. at *16-17. Plaintiff argues this case is no different than Robinson because Defendants "admit that they control their promoters and venues, whether through contractual riders, relationships or leverage." (Dkt. No. 24 at 9.) The Court finds no record of such an admission, except to the extent Defendants attempt to avoid infringement by including a contractual rider with their venue agreements. Plaintiff's use of Defendants' attempts to avoid infringement to show Defendants could possibly be doing more to avoid infringement is not persuasive. Unlike in Robinson, Defendants do not admit and Plaintiffs do not show Defendants' wield any apparent or actual control over the alleged third party infringements in this case.

Defendants have made a showing the nominative fair use defense may apply to their use of the BOSTON marks. Plaintiff has failed to meet his burden to show he is likely to succeed on the merits.[1]

II. Irreparable Harm in Absence of Preliminary Relief

Plaintiff cannot show irreparable harm in the absence of preliminary relief. Plaintiff argues Defendants' alleged infringement will damage the goodwill and reputation of the band

---

[1] In the Ninth Circuit, a plaintiff may also be entitled to a preliminary injunction if he or she merely shows that "there are serious questions going to the merits" as opposed to a "likelihood of success on the merits" so long as the balance of hardships tips sharply in the plaintiff's favor and plaintiff has also demonstrated he will suffer irreparable harm and that an injunction is in the public interest. See, Alliance for the Wild Rockies v. Cottrell, 632 F.3d 1127, 1131-1135 (9th Cir. 2011). This alternative test is known as the "serious questions test." Id. at 1131. As discussed below, however, Plaintiff fails to establish either irreparable harm or that an injunction is in the public interest. Accordingly, even if Plaintiff established "serious questions" going to the merits, under the Ninth Circuit's "serious questions test" he would not be entitled to a preliminary injunction here.

BOSTON. (Dkt. No. 2 at 18.) It is true potential loss of goodwill or loss of ability to control one's reputation can constitute irreparable harm for the purposes of preliminary injunctive relief. Stuhlbarg Intern. Sales Co., Inc. v. John D. Brush and Co., Inc., 240 F.3d 832, 841 (9th Cir. 2001). However, irreparable harm will not be presumed where plaintiff presents no proof beyond speculation that his reputation or goodwill in the market will be damaged, because the court has no way of evaluating this intangible harm. Mirina Corp. v. Marina Biotech, 770 F. Supp. 2d 1153, 1162 (W.D. Wash. 2011). Plaintiff here only speculates.

To the extent Plaintiff argues the actual band BOSTON will suffer from fewer ticket sales because consumers, mistakenly believing they already saw BOSTON when going to a Fran Cosmo concert, will be less likely to buy BOSTON tickets, the harm is economic and can be remedied by damages. (Dkt. No. 2 at 18), Mirina Corp., 770 F. Supp. 2d at 1162.

### III. Balance of Equities

Plaintiff argues the balance of equities tips in his favor because he does not seek to prevent Defendants from performing at any upcoming shows, but only to prevent Defendants from improperly using the BOSTON marks. (Dkt. No. 2 at 19.) As discussed above, Defendants present a viable defense of nominative fair use, and it is not clear at this point the BOSTON marks are being improperly used at all. As also discussed above, Plaintiff has not shown irreparable harm. Conversely, if preliminary relief is granted, Defendants may incur the costs of changing their advertising, at the very least. Where a party moving for a preliminary injunction fails to show they would prevail on the merits or that they will suffer irreparable harm, the balance of hardships has been found to favor defendants. Cascade Fin. Corp. v. Issaquah Cmty. Bank, 2007 U.S. Dist. LEXIS 71966, *48-49 (W.D. Wash.). The balance here tips in favor of Defendants.

ORDER DENYING PRELIMINARY
INJUNCTION- 8

IV. Public Interest

Plaintiff makes a general appeal of the public good in avoiding consumer confusion. (Dkt. No. 2 at 21.) The amorphous public interest benefit of avoiding consumer confusion is not sufficient to show the public interest favors preliminary injunctive relief. eAcceleration Corp. v. Trend Micro, Inc., 408 F. Supp. 2d 1110, 1123 (W.D. Wash. 2006). Plaintiff fails to show this factor weighs in his favor.

## Conclusion

Plaintiff failed to establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, or that an injunction is in the public interest. Winter v. Natural Res. Defense Council, 555 U.S. 7, 20 (2008). Plaintiff's request for a preliminary injunction is DENIED.

The clerk is ordered to provide copies of this order to all counsel.

Dated this 20th day of August, 2013.

James L. Robart
United States District Judge

ORDER DENYING PRELIMINARY
INJUNCTION- 9